# IN THE UNITED STATES BANKRTUPCY COURT FOR THE

## WESTERN DISTRICT OF MISSOURI

## DIVISION I

| | |
|---|---|
| In re:<br><br>WESTERN ROBIDOUX, INC.,<br>Chapter 7 Debtor. | Case No. 19-50505-btf7 |
| WESTERN ROBIDOUX, INC.,<br>Plaintiff,<br><br>v.<br><br>CEVA ANIMAL HEALTH, LLC,<br>Defendant. | Adv. No. 21-04008-btf |
| WESTERN ROBIDOUX, INC.,<br>Plaintiff,<br><br>v.<br><br>BOEHRINGER INGELHEIM ANIMAL HEALTH USA, INC.,<br>Defendant. | Adv. No. 21-04009-btf |

## OBJECTIONS TO THE MOTION

## TO APPROVE PROPOSED SETTLEMENT

## OF DEBTOR'S ADVERSARY ACTIONS

1

# CONTENTS

TABLE OF AUTHORITIES ................................................................................................. 3

INTRODUCTION ............................................................................................................... 6

ISSUES PRESENTED.......................................................................................................... 7

RELEVANT BACKGROUND ............................................................................................ 8

    A.  The Financial Status of the Bankruptcy Estate ............................................ 8

    B.  The Web of Live Claims, Judgments, and Appeals...................................... 8

    C.  The Proposed Settlement of the Adversary Actions Against BIAH and Ceva........... 10

ARGUMENT ..................................................................................................................... 11

  I.  THE PROPOSED SETTLEMENT IS DEEPLY CONTRARY TO THE INTERESTS OF THE
    BANKRUPTCY ESTATE. ................................................................................... 11

  II.  THE RELEVANT FACTORS WEIGH DECISIVELY AGAINST APPROVAL OF THE PROPOSED
    SETTLEMENT........................................................................................................ 13

    A.  Likelihood of Success: The motion gives no reason to doubt the merits of the
      adversary claims.................................................................................. 13

    B.  Difficulties of Collection: There are no difficulties of collection for the estate
      against the adversary defendants BIAH and Ceva...................................... 17

    C.  Costs and Complexity of Litigation: Most of the costs have already been incurred
      and little more should accrue. ............................................................. 20

    D.  Paramount Interest of Creditors: Under the proposed settlement, the unsecured
      creditors recover nothing. .................................................................. 22

  III.  THE PROPOSED PIECEMEAL SETTLEMENT MAKES SETTLEMENT OF THE REMAINING
    ISSUES FAR MORE DIFFICULT. .......................................................................... 26

CONCLUSION & RELIEF REQUESTED.......................................................................... 27

CERTIFICATE OF SERVICE ........................................................................................... 28

## TABLE OF AUTHORITIES[1]

### Cases

Advantage Healthplan, Inc. v. Potter,
  391 B.R. 521 (D.D.C. 2008). ........................................................................... 14, 20

Beauregard v. Hunter,
  2019 U.S. Dist. LEXIS 232233 (D.N.J. Bankr. Sept. 27, 2019). ............................................. 18

Boisaubin v. Blackwell,
  614 B.R. 557 (8th Cir. B.A.P. 2020) ......................................................... 13, 17, 20

Boisaubin v. Blackwell,
  614 B.R. 557 (8th Cir. B.A.P. 2020). ........................................................................... 22

Connecticut Gen. Life Ins. Co. v. United Cos. Fin. Corp.,
  68 F.3d 914 (5th Cir. 1995). ........................................................................... 22, 24

Desmond v. McNiff,
  325 B.R. 493 (D. Mass. Bankr. 2005). ................................................................... 18

Drexel v. Loomis,
  35 F.2d 800 (8th Cir. 1929). ........................................................................... 13, 22

Galloway v. Ford, 2014 Bankr. LEXIS 3626 (9th Cir. B.A.P. Aug. 27, 2014). ........................... 11

In re All Island Truck Leasing Corp.,
  546 B.R. 522 (E.D.N.Y. 2016 Bankr.) ................................................................... 11

In re Arkoosh Produce, Inc.,
  2003 Bankr. LEXIS 2222 (D. Idaho Bankr. July 1, 2003). ............................................... 13, 25

In re Bell & Beckwith,
  93 B.R. 569 (N.D. Ohio Bankr. 1988). ........................................................... 14, 20

In re CS Mining, LLC,
  574 B.R. 259 (D. Utah Bankr. 2017). ................................................................... 18

---

[1] Emphasis is added unless otherwise indicated.  Dkt. cites are to the docket.  This filing will be populated to the adversary actions and, also, has been corrected to include a Table of Authorities and to fix stylistic and typographical errors, among a few omissions in the earlier submitted version.  The essential arguments remain the same.

In re Derivium Capital, LLC,
    380 B.R. 392 (D.S.C. Bankr. 2007). ....................................................... 18

In re ECV Dev., LLC,
    2008 Bankr. LEXIS 4429 (S.D. Cal. Bankr. Oct. 1, 2008). .................................. 17

In re Farwest Pump Co.,
    2022 Bankr. LEXIS 1553 (D. Ariz. Bankr. June 1, 2022). ................................... 18

In re Hanson Industries, Inc.,
    88 B.R. 942 (D. Minn. Bankr. 1988). ..................................................... 21

In re HyLoft, Inc.,
    451 B.R. 104 (D. Nev. Bankr. 2011). ................................................. 14, 20

In re Lloyd, Carr & Co.,
    617 F.2d 882 (1st Cir. 1980). ............................................................ 22

In re Marples,
    266 B.R. 202 (D. Idaho Bankr. 2001). ................................................. 22, 23

In re Marshall,
    33 B.R. 42 (D. Conn. Bankr. 1983). ...................................................... 24

In re McInerney,
    499 B.R. 574, 598 (E.D. Mich. Bankr. Oct. 17, 2013). ..................................... 24

In re Pursuit Holdings (NY), LLC,
    2019 Bankr. LEXIS 785 (S.D.N.Y. Bankr. Mar. 12, 2019). ................................... 25

In re Qmect, Inc.,
    359 B.R. 270, 273 (N.D. Cal. Bankr. 2007). .............................................. 11

In re Rfe Indus.,
    283 F.3d 159 (3rd Cir. 2002). ........................................................... 22

In re RNI Wind Down Corp.,
    348 B.R. 286 (D. Del. Bankr. 2006). ..................................................... 19

In re Simmonds,
    2010 U.S. Dist. LEXIS 87739 (S.D. Fla. July 20, 2010). ................................... 14

In re Vazquez,
    325 B.R. 30, 36 (S.D. Fla. Bankr. Mar. 3, 2005). ........................................ 23

In re Wells,
    26 B.R. 150 (D.R.I. Bankr. 1983). ....................................................... 24

Jubber v. Bird,
   577 B.R. 365, 375 (10th Cir. B.A.P. 2017). ........................................................ 11

LeBlanc v. Salem,
   212 F.3d 632 (1st Cir. 2000). .......................................................................... 22

Morris v. Nat'l Union Fire Ins. Co.,
   303 B.R. 743 (E.D. Penn. Bankr. 2004). ........................................................ 18

O'Connell v. Packles,
   404 B.R. 58 (E.D.N.Y. 2009). ......................................................................... 24

Protective Committee for Indep. Stockholders of TMT Trailer Ferry v. Anderson,
   390 U.S. 414 (1968). ............................................................................... 17, 20

Pullum v. SE Prop. Holdings, LLC,
   598 B.R. 489 (N.D. Fla. Bankr. 2019). ........................................................... 23

Reiss v. Hagmann,
   881 F.2d 890 (10th Cir. 1989). ........................................................................ 24

Simantob v. Claims Prosecutor, L.L.C.,
   325 B.R. 282 (9th Cir. B.A.P. 2005). .............................................................. 14

Tieni v. Mastan,
   2020 Bankr. LEXIS 735 (9th Cir. B.A.P. Mar. 18, 2020). ............................... 21

Tri-State Fin., LLC v. Lovald,
   525 F.3d 649 (8th Cir. 2008). ................................................................... 17, 20

Velasquez v. Gonzales,
   2019 Bankr. LEXIS 1854 (10th Cir. B.A.P. June 18, 2019). ........................... 19

Wilmington Trust Co. v. Weinstein,
   2013 Bankr. LEXIS 4659 (9th Cir. B.A.P. Aug. 20, 2013). ............................. 19

## Treatises

Collier on Bankruptcy P 9019.02 (16th 2022). ............................................................ 22

# INTRODUCTION

Unsecured creditors TooBaRoo, LLC, InfoDeli, LLC, and Mr. Breht Burri hereby object to the pending motion to approve the settlement of the adversary actions for two reasons. First, the proposed settlement of the adversary actions has massive adverse significance to the bankruptcy estate overall. Second, the proposed settlement is a piecemeal settlement that would, if approved, render further settlement of the remaining claims and issues in this case much more difficult.

*First*, this pending motion has massive significance. That's because of the nature of the proposed settlement: the proposed settlement seeks to extinguish two adversary actions that could get the unsecured creditors paid in full and give a surplus. The proposed settlement surrenders these sizeable claims for an amount that would still leave the bankruptcy estate overwhelmed by priority administrative claims. Approval of the settlement, therefore, ensures that the remaining unsecured creditors get nothing. Rejecting the proposed settlement, by contrast, means the unsecured creditors have a meaningful chance at payment in full.

*Second*, the proposed settlement is piecemeal. Its piecemeal nature would, in turn, make it much more difficult to reach further settlements. That's because the central parties involved here—the estate, the pre-petition owners, the unsecured creditors, and the defendants in the adversary actions—have live claims and/or judgments against each other in some form or another. Their complex web of claims and judgments means that a piecemeal settlement, while appearing like progress towards overall resolution, actually impedes it. Here, letting the adversary defendants Boehringer Ingelheim Animal Health, USA, Inc. ("BIAH") and Ceva Animal Health, LLC (Ceva) out of this bankruptcy case entirely without any resolution with respect to some of the other parties, as the proposed settlement would do, substantially limits the options of the remaining parties to offer or provide overall resolution and repose to each other.

6

**ISSUES PRESENTED**

I.    Whether the proposed settlements are fair, equitable, and in best interest of the bankruptcy estate overall, guided with specific reference to the following factors:

a.   The probability of success in the adversary actions.

b.   The difficulties, if any, of collecting upon any judgments that could be obtained in the adversary actions.

c.   The possible complexity, expense, inconvenience, and delay of litigating as compared to settling.

d.   The paramount interests of the creditors and a proper deference to their reasonable views.

## RELEVANT BACKGROUND

### A.    The Financial Status of the Bankruptcy Estate

As can be ascertained by documents received from the Trustee, the current financial status of the bankruptcy estate is that much of the estate has been consumed by priority administrative claims.  Grimm Decl. ¶ 7; Ex. A.  In addition, there are likely to be significant additional priority administrative claims that would engulf the estate as it now exists, even with an additional $140,000 in proposed settlement monies.  For example, the fees payable for three separate, substantial appellate filings arising from the federal litigation don't appear to have been submitted yet.  Grimm Decl. ¶ 8.

Accordingly, given the financial status of the estate and its dim future prospects, if the settlement is approved, the remaining unsecured creditors will receive nothing and, through this settlement, will have surrendered the largest potential claims of the estate for a sum that does not deliver them any value.

### B.    The Web of Live Claims, Judgments, and Appeals

One key aspect of this case is the interlocking nature of the claims, judgments, and appeals here and in related litigation that are pending by the various parties against each other.  All of the central parties involved here—the estate (WRI), the pre-petition owners (the Burri Defendants and their companies and trusts),[2] the unsecured creditors (InfoDeli, TooBaRoo, and Breht), and the defendants in the adversary actions (BIAH and Ceva)—have live claims, judgments, and/or appeals against one another, with a few exceptions.

---

[2] While Breht Burri is also a pre-petition equity holder of 9.6% of the shares in WRI, this filing uses the shorthand of "pre-petition owners" to refer to the remaining 90% pre-petition shareholders, *i.e.*, Connie Burri, Peter Burri and Brian Burri, along with their companies and trusts, including those controlled by their spouses.

It's worthwhile to briefly survey[3] some of those claims, judgments, and appeals:

- *The Bankruptcy Estate*: The estate faces administrative rent claims from Burri Properties, LLC, a company wholly owned by the majority pre-petition owner (Connie Burri); faces an affirmed $1.5 million dollar judgment against it from the unsecured creditors and much larger contingent copyright-infringement claims currently on appeal before the Eighth Circuit; and, finally, faces counterclaims by the adversary defendants for reimbursement of their federal-litigation fees.  On the flip side, the estate has fraudulent-transfer claims against the pre-petition owners that it potentially could assert (assuming the statute of limitations has not run); a sizeable fee award against an unsecured creditor (InfoDeli), and sizeable claims (breach of contract, fraudulent transfer) against the adversary defendants.

- *The Pre-Petition Owners*: The pre-petition owners face the specter of fraudulent-transfer claims asserted by the estate; face claims by the unsecured creditor TooBaRoo for collection upon its $1.6 million judgment[4] and possibly much larger claims from InfoDeli and Breht, depending upon the outcome of the copyright appeals; and face the risk of contribution or other liability-shifting claims from the adversary defendants.  On the flip side, the pre-petition owner Connie Burri has a sizeable claim on the estate (for rent) and potentially sizeable fee amounts against one or more of the unsecured creditors.  (Notably, the pre-petition owners have *not* asserted claims against the adversary defendants, meaning that the pre-petition owners likely do not have leverage over them to help obtain further settlement should this settlement be approved.)

---

[3] Although this filing surveys the claims, judgments, and/or appeals among the central parties here, it makes no assessment of their merits nor waives or forfeits any potential arguments, responses, objections, *etc.*, in favor of or against them.

[4] The parties dispute the characterization of this claim, who has the right to bring it, and whether it is subject to the automatic stay.  The Court has ruled on these issues and the parties have cross-appealed to the District Court, but for present purposes the only key point regarding these claims is to demonstrate the interlocking nature of the various claims in this complex litigation.

- *The Unsecured Creditors*: The unsecured creditors (InfoDeli) face adverse judgments and/or fee awards in the federal litigation from the estate and the adversary defendants.  By contrast, unsecured creditor TooBaRoo has a $1.6 million dollar liquidated judgment, and InfoDeli has unliquidated contingent copyright claims against the estate that are on appeal; if the claims on the copyright succeed, those could ripen into claims against the pre-petition owners in their individual capacities; and finally, InfoDeli has unliquidated copyright claims on appeal against the adversary defendants.

- *The Adversary Defendants*: Finally, the adversary defendants BIAH and Ceva face claims by the Estate in the adversary action and claims by the unsecured creditors that are on appeal in the federal copyright litigation, but no claims from the pre-petition owners.  On the flip side, the adversary defendants have asserted claims against the estate; could possibly assert claims against the pre-petition owners on a contribution theory or the like; and have fee awards / judgments against the unsecured creditors (InfoDeli) from the federal litigation.

The key point is that there are interlocking claims by almost all of the parties in some form or another.  The notable absence is that the pre-petition owners do not currently have claims against the adversary defendants BIAH and Ceva.  Instead, the adversary defendants are solely in this bankruptcy case by virtue of their claims on the estate and as adversary defendants.  The settlement is a piecemeal settlement and, by letting the adversary defendants out of this case entirely without them compromising on their other claims, this settlement renders further settlement more difficult for remaining parties.

**C.**      **The Proposed Settlement of the Adversary Actions Against BIAH and Ceva**

The proposed settlements are summarized in the motion.  Dkt. 381 at 4-5.  They are also appended in full to the motion.  Dkt. 381 at 8-13 (Ceva); id. at 15-21 (BIAH).  In essence, the estate gets $140,000 from the adversary defendants and then the estate settles its claims against the adversary defendants and the adversary defendants withdraw their disputed claims for further payment of fees.  See id.

## ARGUMENT

### I.   THE PROPOSED SETTLEMENT IS DEEPLY CONTRARY TO THE INTERESTS OF THE BANKRUPTCY ESTATE.

If approved, the proposed settlement is currently poised to give almost nothing to unsecured creditors. See Grimm Decl. ¶ 7 Ex. A. With significant additional administrative claims on their way, see Grimm Decl. ¶ 8, whatever value the proposed settlement might deliver will evaporate entirely.

By contrast, if the adversary claims are litigated (especially on contingency as counsel are willing to do, Grimm Decl. ¶ 4), the unsecured creditors could receive payment—in full and possibly with a surplus. See, e.g., In re Qmect, Inc., 359 B.R. 270, 273 (N.D. Cal. Bankr. 2007) (considering "availability of counsel willing to handle the litigation on a contingent fee basis"). Given the choice between a chance at payment in full and a settlement that leaves nothing for the unsecured creditors, the proposed settlement should be denied.

After all, the fundamental purpose of a corporate Chapter 7 case it to deliver value to creditors, especially to the unsecured creditors:

- "As explained in the handbook provided to chapter 7 trustees by the U.S. Trustee program, a chapter 7 case must be administered to maximize and expedite dividends to creditors." Galloway v. Ford, 2014 Bankr. LEXIS 3626, *24-25 (9th Cir. B.A.P. Aug. 27, 2014).

- "A chapter 7 trustee is a fiduciary of the estate whose principal duty is to administer estate property so as to maximize distribution to unsecured creditors[.]" Jubber v. Bird, 577 B.R. 365, 375 (10th Cir. B.A.P. 2017); In re All Island Truck Leasing Corp., 546 B.R. 522, 532 (E.D.N.Y. 2016 Bankr.) (same)

Here the proposed settlement does not deliver any value to the unsecured creditors. That fact alone should end the matter: the settlement doesn't further the purpose of the Chapter 7 estate. Simply

put, the proposed settlement is deeply contrary to the fundamental purpose of a corporate Chapter

7 case and is, consequently, not in the best interest of the estate.

II.      **THE RELEVANT FACTORS WEIGH DECISIVELY AGAINST APPROVAL OF THE PROPOSED SETTLEMENT.**

A.      **Likelihood of Success: The motion gives no reason to doubt the merits of the adversary claims.**

The first factor that a bankruptcy court should consider in reviewing a proposed settlement is the probability of success in the matter proposed to be settled. Boisaubin v. Blackwell, 614 B.R. 557, 564 (8th Cir. B.A.P. 2020); see also Drexel v. Loomis, 35 F.2d 800, 806 (8th Cir. 1929) ("probability of success in the litigation"). Here, four separate reasons demonstrate that this first factor—probability of success—weighs heavily against the proposed settlement.

*First* and foremost, a chance at payment of the unsecured creditors in full or in part (through litigation of the adversary actions) is definitively better than a guarantee of nothing for the remaining unsecured creditors (under the proposed settlement).

As an initial and practical matter, it is worth stressing the competing pragmatic consequences of the proposed settlement relative to continued pursuit of the adversary actions here. At present, the proposed settlement ensures after all of the administrative claims are brought for approval and paid, there will be nothing (or a mere nominal amount) left for the remaining unsecured creditors. Thus, the unsecured creditors are facing a choice between either (1) *some* chance at payment in full if the merits are pursued and the claims go to trial and win or (2) a settlement that leaves them with *nothing*. That's not a tough choice—regardless of whether one assesses the probability of the estate's victory in the adversary actions as high or low.

Whether it's a hypothetical 5% chance of prevailing or a 50% chance at prevailing, that's better than a 100% chance of receiving nothing. Cf. In re Arkoosh Produce, Inc., 2003 Bankr. LEXIS 2222, *35 (D. Idaho Bankr. July 1, 2003) ("[T]he Court is persuaded that the Trustee could recover more through litigation than creditors will receive via the settlement, even after taking into consideration the cost of delays and litigation expenses.").

In other words, regardless of the strength of the merits, a small chance at some recovery is still preferable to a near certainty of no recovery. After all, a chance at something is preferable to a guarantee of nothing.

_Second_, the trustee's motion does not establish that the probability of success on the merits are weak. This failure to present evidence to establish that the first factor favors settlement is important. That's because the trustee bears the burden to demonstrate that the factors support settlement. See, e.g., In re Bell & Beckwith, 93 B.R. 569, 574 (N.D. Ohio Bankr. 1988) ("Trustee's burden of proof"); In re Simmonds, 2010 U.S. Dist. LEXIS 87739, *8-9 (S.D. Fla. July 20, 2010) ("Trustee's burden [...] to establish the reasonableness of the settlement").

Indeed, to satisfy that burden the Trustee "must present a cogent and **detailed factual explanation**, discussing how the factors apply to the specific litigation and proposed settlement." In re HyLoft, Inc., 451 B.R. 104, 110 (D. Nev. Bankr. 2011). That's because a "bankruptcy court's decision to approve [a] settlement [] must be an informed one based upon an objective evaluation of **developed facts**." Advantage Healthplan, Inc. v. Potter, 391 B.R. 521, 554 (D.D.C. 2008). To permit or to "tolerate less would make the Court into a rubber stamp, allowing the trustee's evaluation to be determinative." Id. And this independent review of the trustee's decision to settle is important "particularly in the face of opposition by creditors[.]" Simantob v. Claims Prosecutor, L.L.C., 325 B.R. 282, 289 (9th Cir. B.A.P. 2005). After all, a "bankruptcy judge cannot 'accept the [proponent's] word that the settlement is reasonable[.]" Advantage Healthplan, Inc. v. Potter, 391 B.R. 521, 554 (D.D.C. 2008).

Here, the Trustee's motion does not present facts demonstrating that the first factor supports settlement. The Trustee's motion does speak to the asserted complexity and cost of pursuing the merits. Dkt. 381 at 7 ¶ 25(b) ("claims are complex, requiring expert testimony"); id. ("incur substantial attorneys' fees to continue to litigate"). Those burdens speak to the third factor. Yet the motion simply makes no showing or argument that the merits are weak or that there is little probability of success on the merits. See generally Dkt. 381 (especially Dkt. 381 at 6-7 ¶ 25).

14

In other words, the motion fails to demonstrate that the first factor favors the proposed settlement and, without that showing, this factor does _not_ support the settlement.

_Third_, the Trustee has expressed, in discussions outside of the Motion, hesitation about pursuing the merits because the case, in her view, presents a battle of the experts, creating uncertainty around the outcome.    Specifically, from conversations with the Trustee, the undersigned understands the Trustee to view this dispute as a battle between two valid but competing expert methodologies to determine the date of WRI's insolvency.  Grimm Decl. ¶ 2.

But a battle between experts with valid but competing methods of determining the date of insolvency does not demonstrate a low probability on the merits.  Assuming both experts take meritorious positions, a battle of the experts presents something more akin to a coin flip.  While a 50-50 chance might favor settlement and militate against litigation in some circumstances, here the pragmatic calculus weighs otherwise.  A 50% chance of payment is far better from the unsecured creditors' perspective than a settlement that all-but guarantees them nothing.

_Fourth_, the objecting creditors and counsel believe these claims are very strong claims—much stronger than a coin flip's chance in a battle between competing experts.  Two concrete reasons bear that assessment out.

As an initial matter, the adversary proceedings are on the precipice of trial.  They are not weak claims, despite attempts to dispose of these adversary claims through motions practice. Indeed, the Trustee's own Motion in support of the settlement implicitly acknowledges the strength of the claims which have survived to trial.  Dkt. 381 at 7 ¶ 25 ("with these adversaries set for a week-long trial later this year").

Furthermore, the strength of the claims is also bolstered by submissions of the adversary defendants themselves in the federal litigation.  Indeed, the adversary defendants expressed their worries about WRI's insolvency early in the federal litigation.  E.g., Fed. Dist. Ct. Dkt. 123 at 7. ("WRI is likely to become bankrupt long before the Court reaches the merits of Plaintiffs' copyright claims[.]");123 at 1 (concerns litigation would  "bankrupt" WRI).

These positions regarding insolvency are attributable to the adversary defendants themselves and provide a powerful way to demonstrate their acute awareness and knowledge of the risk of insolvency that came true.  Fed. Dist. Ct. Dkt. 123 at 1.

\* \* \* \* \*

In sum, the Trustee's motion in support of the proposed settlement makes no showing that the merits are weak—*i.e.*, no showing that this first factor favors settlement.  To the contrary, the probability of success on the merits is quite strong in both cases, as demonstrated by the dockets in the adversary actions that are proposed to be settled and in the related federal docket.  And, regardless, there is a meaningful chance of recovery.  There are ready and willing contingency counsel to take this case over and pursue it through trial.  Ultimately, the proposed settlement would provide nothing of value to the remaining unsecured creditors, thus the.

This factor does not support approval of the proposed settlement.

**B.      Difficulties of Collection: There are no difficulties of collection for the estate against the adversary defendants BIAH and Ceva.**

The second factor—difficulties in collection—also does not support approval of the proposed piecemeal settlement.

Under the overarching umbrella determination of whether a proposed settlement is in the best interests of the estate, courts also consider "the difficulties, if any to be encountered in the matter of collection[.]"  Lovald, 525 F.3d at 654 (8th Cir. 2008); Boisaubin, 614 B.R. at 564 (8th Cir. B.A.P. 2020) (second Lovald factor: "difficulties, if any, in the manner of collection"); see also TMT, 390 U.S. at 424 ("the possible difficulties of collecting on any judgment which might be obtained").

In other words, this factor assumes the estate would win in its adversary actions and then inquires whether the bankruptcy estate could collect on its judgments against BIAH and Ceva, the adversary defendants.  Here, the estate is claiming a total of five million ($5M).  No. 21-4008-btf Doc. 29 at 21 ($2.5M demand against CEVA); No. 21-4009-btf Doc. 33 at 20 ($2.5M demand against BIAH).  The question, then, is whether there would be difficulties in collecting five-million dollars against BIAH and Ceva.  There wouldn't be, because BIAH and Ceva are massive companies that could readily pay $5 million.

*First*, the motion itself does not advance any evidence or argument that collection would be difficult.  Doc. 381 at 6-7 (a-c); see generally id.  And, the motion's failure to provide any evidence or reasoning means that this difficulty-of-collection factor certainly does not support approval of the proposed piecemeal settlement.  Courts have recognized that, if there are any "unusual barriers" to collection that the movant should identify them—or, otherwise, this factor will *not* support approval.  E.g., In re ECV Dev., LLC, 2008 Bankr. LEXIS 4429, *15-16 (S.D. Cal. Bankr. Oct. 1, 2008) ("The Trustee does not advance evidence regarding the solvency of the Settling Defendants.  Thus, the Court concludes that there will be no unusual barriers to collection. This factor is neutral at best for the Trustee.").

17

*Second*, BIAH and Ceva could readily pay a $5M judgment. The principle inquiry is whether BIAH and Ceva have the "ability to satisfy a judgment" of $5 million. See, e.g., Desmond v. McNiff, 325 B.R. 493, 498 (D. Mass. Bankr. 2005). There's no serious doubt about that. BIAH's parent company's 2021 global sales exceeded $20 billion and its 2021 sales in the Americas alone exceeded $9 billion. Grimm Decl. ¶ 10, Ex. B at 2-3 (Boehringer Ingelheim's 2021 Summary Report). Ceva isn't as large but it's still huge: in 2020, Ceva's parent company noted over $1 billion in sales and 15% growth. Grimm Decl. ¶ 11 , Ex. C at 2-3 (Ceva 2020 Press Release). BIAH and Ceva are big companies for which the ordinarily sizeable amount of $5 million would be readily serviceable. There is "simply nothing to indicate that [BIAH or Ceva] is anything but solvent" and able to pay. See Morris v. Nat'l Union Fire Ins. Co., 303 B.R. 743, 752 (E.D. Penn. Bankr. 2004). Five million dollars is a ton to many—but an accounting line item to them.

*Third*, BIAH and Ceva's assets would be ripe for execution. They have plentiful "non-exempt assets" that would be subject to examination and execution if they would not voluntarily pay. See In re Derivium Capital, LLC, 380 B.R. 392, 405-406 (D.S.C. Bankr. 2007). Nor is there any serious prospect that even an "expensive and protracted litigation" here would meaningfully affect their finances, given BIAH's and Ceva's respective sizes. See In re CS Mining, LLC, 574 B.R. 259, 274 (D. Utah Bankr. 2017) (litigation expenses could affect viability of smaller entities). These adversary actions will not have *any* meaningful effect on BIAH's or Ceva's overall financial health or ability to pay. Cf., e.g., Beauregard v. Hunter, 2019 U.S. Dist. LEXIS 232233, *25-26 (D.N.J. Bankr. Sept. 27, 2019) (difficulty of collection arises when serious risk of adversary defendant filing for bankruptcy).

*Fourth*, collecting upon any judgments would not be costly to the estate. There are two adversary defendants—not a multitude. See In re Farwest Pump Co., 2022 Bankr. LEXIS 1553, *19 (D. Ariz. Bankr. June 1, 2022) ("number of parties" affects difficulty of collection). Likewise,

the estate need not incur any upfront costs of collection, examination, or execution because it has at its fingertips counsel who would do so on contingency.  Grimm Decl. ¶ 5.

In fact, the estate would incur no collection costs until its judgments were collected.  Even if there were significant costs to collection for the estate, the estate would only pay a portion of those as the judgments are collected.  See Velasquez v. Gonzales, 2019 Bankr. LEXIS 1854, *16-17 (10th Cir. B.A.P. June 18, 2019) (discussing "costs that would have to be incurred in pursuing the judgment").  In this sense, collecting upon adversary judgments could only generate value for the estate—not diminish it.

_Fifth_, unlike the estate, the adversary defendants would have extreme difficulty collecting anything on their counterclaims in the adversary actions.  BIAH and Ceva plainly don't have contingency counsel—their counterclaims are _for attorneys' fees spent in the Federal litigation_. Their claims—even if successful—probably aren't priority claims.  And, even if priority, their claims would need to compete with so many other priority claims that BIAH and Ceva's costs of litigation—at trial and on appeal—would dwarf any possible upside BIAH and Ceva could receive. In other words, there is not an equivalence on both sides of the adversary actions: while the estate could readily prevail and then collect in full, BIAH and Ceva would find themselves with a heavily diluted judgment against a company in the throes of Chapter 7 liquidation.

\* \* \* \* \*

There's no question that BIAH and Ceva have the assets to make good on an up-to-$5 million judgment and there's no question that the adversary actions, no matter how hard-fought, will not change this fact.  If the estate wins, it will have "little if any difficulty in collecting" and so "this fact weighs against approving" the settlement.  See In re RNI Wind Down Corp., 348 B.R. 286, 298 (D. Del. Bankr. 2006); Wilmington Trust Co. v. Weinstein, 2013 Bankr. LEXIS 4659, *45-46 (9th Cir. B.A.P. Aug. 20, 2013) ("[N]o difficulties existed in the matter of collection, so this factor disfavored settlement.").

Thus, this second factor weighs against approval of the proposed piecemeal settlement.

C.      **Costs and Complexity of Litigation: Most of the costs have already been incurred and little more should accrue.**

The third factor—the cost and complexity and delay of litigation—also does not support approving the proposed settlement.

The third factor used in determining whether a proposed settlement is in the best interests of the estate asks courts to consider "the complexity of the litigation involved, a[n]d the expense, inconvenience and delay necessarily attending it[.]" Lovald, 525 F.3d at 654 (8th Cir. 2008); Boisaubin, 614 B.R. at 564 (8th Cir. B.A.P. 2020) (third Lovald factor: "the complexity of the litigation and the attending expense, inconvenience, and delay"); see also TMT, 390 U.S. at 424 ("estimate of the complexity, expense, and likely duration").

Here, this third factor does not support approving the proposed settlement.

*First*, the Trustee bears the burden of demonstrating that this factor supports approving the settlement. See, e.g., In re Bell & Beckwith, 93 B.R. 569, 574 (N.D. Ohio Bankr. 1988) ("Trustee's burden of proof"). Satisfying this burden requires a "**detailed factual explanation**, discussing how the factors apply to the specific litigation and proposed settlement." In re HyLoft, Inc., 451 B.R. 104, 110 (D. Nev. Bankr. May 25, 2011); Advantage Healthplan, Inc. v. Potter, 391 B.R. 521, 554 (D.D.C. 2008) ("settlement [] must be an informed one based upon an objective evaluation of **developed facts**.").

But here the trustee's motion does not explain or approximate what the further cost of litigation would be. Nor does it explain or demonstrate with factual explanation of how litigation would present cost-prohibitive expense or complexity beyond the unsubstantiated claim that litigation would require expensive experts and cost-prohibitive attorney fees.

*Second*, the motion overlooks the possibility of contingency counsel and availability of experts at below market rates to pursue claims. Grimm Decl. ¶¶ 4-6. In fact, German May was originally going to handle these matters on contingency, but BIAH was set to object, so German May withdrew, and was replaced by counsel charging for its services. The availability of

contingency counsel here greatly reduces the cost of litigation, tilting this factor against approving the settlement.

*Third*, the parties are on the precipice of trial on the adversary claims.  Thus, given that the parties are "on the brink of trial [...] the delay caused by litigation" should not be "a driving factor[.]"  <u>Tieni v. Mastan</u>, 2020 Bankr. LEXIS 735, *10 (9th Cir. B.A.P. Mar. 18, 2020).  And again, the ordinary cost and inconvenience of litigation are offset here by the availability of contingency counsel.  <u>See</u> <u>In re Hanson Industries, Inc.</u>, 88 B.R. 942, 949 (D. Minn. Bankr. 1988) (pointing to this **lack** of "a commitment from any attorneys to take the case on a contingency fee basis" as tilting this factor in favor of settlement).  Here, there is no such lack, but rather an offer of contingency representation.

For these reasons, this third factor also weighs against approving the settlement.

**D.     Paramount Interest of Creditors: Under the proposed settlement, the unsecured creditors recover nothing.**

The fourth factor also weighs against the proposed settlement.

It is well-established under Eighth Circuit precedent, that a bankruptcy court reviewing a proposed settlement must consider "the paramount interest of the creditors" and must give "proper deference" to their reasonable objections.  Boisaubin v. Blackwell, 614 B.R. 557, 564 (8th Cir. B.A.P. 2020); see also Drexel v. Loomis, 35 F.2d 800, 806 (8th Cir. 1929).  Other Circuits have likewise embraced "the famous test offered by the Eighth Circuit in Drexel v. Loomis: the paramount interest of creditors with proper deference to their reasonable views." Connecticut Gen. Life Ins. Co. v. United Cos. Fin. Corp., 68 F.3d 914, 917 (5th Cir. 1995); see In re Rfe Indus., 283 F.3d 159, 165 (3rd Cir. 2002) ("paramount interest of the creditors.")

This consideration ensures that a proposed settlement is only approved where it is both "fair and equitable." 10 Collier on Bankruptcy P 9019.02 (16th 2022).  And, the "deference required by this standard is best viewed as being owed to those creditors who express their views." In re Marples, 266 B.R. 202, 207 (D. Idaho Bankr. 2001).  That's why courts give deference to "the active opposition of the major creditors."  In re Lloyd, Carr & Co., 617 F.2d 882, 891 (1st Cir. 1980).

When, as here, the major liquidated, non-contingent creditor objects to a proposed settlement, that objection is owed considerable deference.  After all, "in the bankruptcy context, the interests of the creditors not the debtors are paramount." Connecticut Gen. Life Ins. Co. v. United Cos. Fin. Corp., 68 F.3d 914, 917 (5th Cir. 1995).  And, a "chapter 7 trustee is entrusted to marshal an estate's assets and liabilities, and proceed in settling" so as to "net the maximum return for the creditors (on whose behalf [s]he toils)."  LeBlanc v. Salem, 212 F.3d 632, 635 (1st Cir. 2000).

Here, TooBaRoo (the largest liquidated unsecured creditor), InfoDeli (probably the largest creditor overall), and Breht Burri object to the proposed settlement.  They are the largest unsecured

creditors.  They are the majority or near-majority unsecured creditors, at present.  At present, they are entitled to most of the unsecured claims.  And, if their contingent claims go through and they prevail in the pending Eighth Circuit copyright appeals, then their claims will dwarf all other claims by orders of magnitude.  Nevertheless, the proposed settlement virtually ensures that they, the largest unsecured creditors, will receive nothing.

The problem then with the proposed settlement is that the non-priority unsecured creditors get nothing.  After the administrative expenses are accounted for, there will be nothing left for the non-priority unsecured creditors and little left for the priority unsecured creditors.  And that's without the benefit of a comprehensive accounting of the administrative expenses, which are very likely to increase significantly, given that WRI's attorney recently worked on three appellate filings.  By the time the administrative expenses are accounted for, the creditors will be left with a nominal amount at best and, most likely, nothing.

Accordingly, the objections by the largest unsecured creditors to the proposed settlement are significant.  Moreover, their objections are due deference: deference is "owed to those creditors who express their views."  In re Marples, 266 B.R. 202, 207 (D. Idaho Bankr. Aug. 10, 2001); cf. also id. ("Little if any proper deference need be given silence").  Here, the "paramount interest of the creditors"—overall and especially those who have spoken—weighs heavily against the proposed settlement.

This is especially so because InfoDeli, TooBaRoo, and Breht are objecting creditors who represent an overwhelming majority of the unsecured debt.  E.g., Pullum v. SE Prop. Holdings, LLC, 598 B.R. 489, 496 (N.D. Fla. Bankr. 2019) ("With Objecting Creditors representing such an overwhelming amount of the unsecured debt, it would be improper for the Court to disregard [these] objections, so this factor weighs against approval of the settlement[.]").

That's not all.  The unsecured creditors are prepared to assume the litigation through contingency counsel.  They, and their counsel, "would receive nothing without success in the lawsuit."  In re Vazquez, 325 B.R. 30, 36 (S.D. Fla. Bankr. Mar. 3, 2005) (discussing Reiss v.

Hagmann, 881 F.2d 890 (10th Cir. 1989)).  That's a demonstration of how central this issue is to their claims in the estate.

Courts have also found "reasonable and persuasive" the views of objecting creditors where "unsecured creditors will get very little or nothing from the settlement, because [...] administrative claims and other priority claims will have to be paid first."  In re McInerney, 499 B.R. 574, 598 (E.D. Mich. Bankr. Oct. 17, 2013).  In such a situation, the fourth factor weighs against settlement.

Likewise, courts have rejected settlements where the objecting creditor was willing to offer services that would reduce the cost of litigation to the estate—*i.e.*, contingency counsel to litigate the adversary actions.  See Connecticut Gen. Life Ins. Co. v. United Cos. Fin. Corp., 68 F.3d 914, 918 (5th Cir. 1995); In re Marshall, 33 B.R. 42, 45 (D. Conn. Bankr. 1983) (disapproving settlement where creditor with majority interest in the result of the litigation raised reasonable objections and was willing to reduce burden to the estate); In re Wells, 26 B.R. 150, 152 (D.R.I. Bankr. 1983) (no settlement allowed where objecting creditor with majority interest was willing to reduce burdens of the estate).

Moreover, it is especially important to consider the views of the unsecured creditors because of the relationship among the other parties as co-defendants in related litigation: the other central parties here share an interest in trying to use the bankruptcy estate as a vehicle to avoid giving assets to their adversaries in the federal litigation, namely InfoDeli and Breht.  See Connecticut Gen. Life, 68 F.3d at 919 (judicial "scrutiny must be great when the settlement is between insiders" and especially where the "majority of creditors in interest oppose such settlement of claims").

Finally, those cases in which bankruptcy courts have approved settlements are inapposite stand in stark contrast to the present situation.

For instance, the paramount interests of creditors weigh in favor of a proposed settlement where there is "the prospect of an assured recovery" to an objecting creditor.  O'Connell v. Packles, 404 B.R. 58, 76-77 (E.D.N.Y. 2009).  And, courts have determined this factor weighs in favor of

24

approving a settlement where "the unsecured creditors would receive a certain payout under the Agreement." In re Pursuit Holdings (NY), LLC, 2019 Bankr. LEXIS 785, *24-25 (S.D.N.Y. Bankr. Mar. 12, 2019).  In other words, where the "unsecured creditors are better off under the agreement" this factor weighs in favor of approval.  Id.

Here by contrast, the creditors are not better off under the proposed settlements.  And, here there is no assured recovery to the objecting creditors under the proposed settlements.  By contrast, the opposite is true if the settlements are refused: lack of recovery is virtually ensured by the proposed settlements.

* * * * *

In short, courts have found this fourth factor weighing against settlement where "the settlement gives away too much in exchange for too little, such that the creditors' best interests are not served." In re Arkoosh Produce, Inc., 2003 Bankr. LEXIS 2222, *35 (D. Idaho Bankr. July 1, 2003).  That's the case here.

This is not a case where the settlements advance the paramount interest of the creditors by "ensuring they receive the highest recovery from the estate that is reasonably attainable." Id. To the contrary, the proposal surrenders valuable claims that could get payment in full for what amounts to payment of nothing to the key persons for whom the Chapter 7 bankruptcy estate exists. Thus, the paramount interest of the creditors weighs heavily against approving these settlements, and these objections by the largest unsecured creditors are entitled to proper deference under established Eighth Circuit jurisprudence.

**III.**    **THE PROPOSED PIECEMEAL SETTLEMENT MAKES SETTLEMENT OF THE REMAINING ISSUES FAR MORE DIFFICULT.**

There's an understandable, knee-jerk instinct to think that settlement, even piecemeal settlement, presents progress towards ultimate resolution of a case.  Here, that's <u>not</u> the case. Given the specific dynamics of this case, implicating a complex web of claims between the various parties, that instinct would be misguided.  Here, the proposed piecemeal settlement would actually disincentivize ultimate global resolution of this dispute and would create an impasse to further settlement among the remaining parties.

Because BIAH and Ceva have claims against other parties, letting the adversary defendants out of the bankruptcy proceedings without resolving those claims with the remaining parties risks chilling the incentive and ability of the remaining parties to settle this dispute. As a pragmatic matter, much of the incentive and leverage to induce further settlement would be removed should the proposed piecemeal settlement be approved, whereas its denial would incentivize everyone to come to the table and try for a larger, more productive resolution aligned with the fundamental purposes of Chapter 7 corporate liquidations.

## CONCLUSION & RELIEF REQUESTED

The Court should deny approval of the proposed settlements.  It should indicate its willingness to appoint contingency counsel to prosecute the adversary actions, and appoint independent special counsel and/or creditors' counsel to pursue on a derivative and on a contingency basis.  The Court should direct the parties to see if a larger mediated resolution is possible and, if so, permit time for the parties to explore resolution in mediation.

Date: September 16, 2022                    Respectfully submitted,

**DIGITAL JUSTICE FOUNDATION**
A NEBRASKA NONPROFIT LAW FIRM

By */s/ Andrew Grimm*
     Andrew Grimm (admitted *pro hac* vice)
     15287 Pepperwood Drive
     Omaha, Nebraska 68154
     (531) 210-2381
     Andrew@DigitalJusticeFoundation.org

     *Attorney for Objectors TooBaRoo, InfoDeli, Breht Buri*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served via this Court's

CM/ECF system to other counsel of record.

DATED: September 16, 2022                    Respectfully submitted,

                                             */s/ Andrew Grimm*
                                             Andrew Grimm